16 N.Y.2d 302 (1965)
Nuvia A. Lawes, an Infant, by Her Guardian ad Litem, Leon Lawes, et al., Respondents,
v.
Board of Education of the City of New York, Appellant, et al., Defendant.
Court of Appeals of the State of New York.
Argued October 26, 1965.
Decided December 30, 1965.
Leo A. Larkin, Corporation Counsel (Seymour B. Quel of counsel), for appellant.
Norman Bard and Max Jackrel for respondents.
Judges DYE, FULD, VAN VOORHIS and SCILEPPI concur with Judge BERGAN; Judge BURKE dissents in an opinion in which Chief Judge DESMOND concurs.
*304 BERGAN, J.
Plaintiff Nuvia Alicia Lawes, a pupil at Public School No. 144 in Brooklyn, was struck by a snowball thrown by a fellow pupil while she was on her way from her home to her classroom after lunch on February 17, 1960. Plaintiff, then 11 years old, suffered a serious eye injury. A judgment for $45,000 has been rendered against the Board of Education and affirmed by a divided Appellate Division.
The snowball was thrown on school property in a yard between the street and school entrance, but this was not during a recreation period. Children were then on the property on their way into the school after having been home to lunch. The school had made a rule against snowball throwing and plaintiff's teacher had warned her pupils not to throw snowballs.
If a school is to become liable to one pupil for a snowball thrown at him by a fellow pupil, the rule governing such responsibility should be laid down clearly and be precise enough to be generally understood in the schools.
No one grows up in this climate without throwing snowballs and being hit by them. If snow is on the ground as children come to school, it would require intensive policing, almost child by child, to take all snowball throwing out of play. It is unreasonable to demand or expect such perfection in supervision from ordinary teachers or ordinary school management; and a fair test of reasonable care does not demand it.
*305 The classic New York statement of the measure of school care for children is laid out in Judge LOUGHRAN'S noted opinion in Hoose v. Drumm (281 N.Y. 54, 57-58): "Teachers have watched over the play of their pupils time out of mind. At recess periods, not less than in the class room, a teacher owes it to his charges to exercise such care of them as a parent of ordinary prudence would observe in comparable circumstances."
A parent of ordinary prudence would not invariably stop his children from making and throwing snowballs. Indeed, he might encourage it. He would stop dangerous throwing, if he learned hard frozen snow or ice had come into play, or the pelting of one child by several others, but ordinary snowball throwing would not necessarily be stopped.
A reasonable measure of a school's responsibility for snowball throwing is to control or prevent it during recreation periods according to its best judgment of conditions, and to take energetic steps to intervene at other times if dangerous play comes to its notice while children are within its area of responsibility.
The facts in the present case do not spell out any notice of special danger. There is no proof whatever in the record that teachers had notice of any other snowball throwing on the day plaintiff was hit. Proof that a snowball was thrown on the previous day is very thin and, even if fully credited, would not give fair notice of the kind of continued danger which should have been prevented by the active intervention of teachers.
A fellow pupil and friend of plaintiff testified that she was struck by a snowball on February 16 and that she reported this to a teacher. She did not testify that she reported that she was injured. She said: "I told her I got hit. Somebody hit me with a snowball."
The teacher denied having been told this and the Education Department records marked for identification, which the trial court refused to receive, show that this pupil reported in writing that she had been struck by a snowball, not before, but some five weeks after, plaintiff's injury.
No requirement on this kind of a record is imposed on teachers to enforce the rule against snowballs by standing outside in the cold to watch to see that children do not violate the rule as they come into the school. And it is an undue burden on the school to impose a liability because teachers did not stand outside *306 for active intervention in the circumstances shown by this record.
A school is not liable for every thoughtless or careless act by which one pupil may injure another (Hoose v. Drumm, 281 N.Y. 54, supra; Ohman v. Board of Educ. of City of N. Y., 300 N.Y. 306; Wilber v. City of Binghamton, 296 N.Y. 950; Clark v. City of Buffalo, 288 N.Y. 62). Nor is liability invariably to fall on it because a school rule has been violated and an injury has been caused by another pupil (Maurer v. Board of Educ. of City of N. Y., 294 N.Y. 672).
It is not easy to find a decided case either in New York or other jurisdictions where a school has been cast in liability for a snowball thrown by one pupil at another, and no authority sustaining such a liability is cited by respondents. (Cf. 78 C. J. S., Schools and School Districts, § 320, pp. 1321-1325.)
In its result the judgment in this case imposes a greatly enlarged risk of liability on a school without showing notice of a particular danger at a particular time. A long line of decisions should cause us to proceed warily toward such an enlarged area of liability. (See, e.g., Ohman v. Board of Educ. of City of N. Y., supra, a thrown lead pencil; Wilber v. City of Binghamton, supra, a batted stone; May v. Board of Educ. Union Free School Dist. No. 1, 295 N.Y. 948, cinders in the schoolyard pavement; Maurer v. Board of Educ. of City of N. Y., supra, inadequately supervised swimming, and Clark v. City of Buffalo, supra, a thrown piece of glass.)
The order should be reversed and the complaint dismissed, without costs.
BURKE, J. (dissenting).
The majority opinion has correctly outlined the duty of care imposed by law upon a school for the protection of its students in a case such as this, i.e., "A reasonable measure of a school's responsibility for snowball throwing is to control or prevent it during recreation periods according to its best judgment of conditions, and to take energetic steps to intervene at other times if dangerous play comes to its notice while children are within its area of responsibility." However, I disagree with the majority's determination that as a matter of law the Board of Education did not breach this duty, notwithstanding contrary findings of fact affirmed in the Appellate Division.
*307 Although the plaintiff was passing through the schoolyard on her way into the school, the other children were not merely passing through. They had returned from their lunch and were playing in the schoolyard awaiting the commencement of their afternoon classes. That the remainder of a luncheon recess, after school children have returned from lunch and are playing in the schoolyard, is a "recreation period" as used by the majority in defining the board's duty is hardly controvertible. Furthermore, a duty of supervision over such playground activity is clearly imposed upon the Board of Education by subdivision 16 of section 1709 of the Education Law. (Decker v. Dundee Cent. School Dist., 4 N Y 2d 462, 464 [1958].) In recognition of this duty, the school authorities promulgated a regulation forbidding the throwing of snowballs on the school premises. Once this particular standard of care was adopted, whether or not it was reasonably complied with was a question of fact to be submitted to the jury. The Appellate Division unanimously agreed that plaintiff had established a prima facie case; the principal cause for the dissent was the admissibility of certain evidence, not a disagreement as to the duty imposed upon the Board of Education. That the snowball throwing was a dangerous activity, that the school authorities had notice thereof, and that they failed to act reasonably under the circumstances, proximately causing plaintiff's damages, are affirmed findings of fact which cannot be disputed here. For these reasons I would affirm in all respects.
Order reversed, etc.