Baxter Reid, Jr., Plaintiff-Appellee, v. Young Men's Christian Association of Peoria, Illinois, a Non-Profit Corporation, Defendant-Appellant.

Gen. No. 68–54.

Third District.

March 13, 1969.

Rehearing denied April 16, 1969.

Cassidy, Cassidy, Quinn & Lindholm, of Peoria, for appellant.

Frederick W. Allen, of Peoria, for appellee.

STOUDER, P. J.

Plaintiff-Appellee, Baxter Reid, Jr., brought this action in the Circuit Court of Peoria County seeking damages for personal injuries based on the alleged negligence of the Peoria YMCA, Defendant-Appellant, and Larry Embury, Defendant. The issues were submitted to a jury which returned a verdict in favor of the plaintiff and against the YMCA in the amount of $15,000 from which verdict and judgment the defendant has appealed. The jury found the issues in favor of defendant, Larry Embury and no cross appeal has been filed by plaintiff. Post-trial motions of defendant YMCA were denied.

At the time of trial, plaintiff was 24 years of age although at the time of the incident herein involved he was 11 years old. On Saturday morning, March 20, 1954, plaintiff, a member of the Peoria YMCA, was present in the gymnasium of the YMCA as a participant in the Y's programs. Plaintiff had been designated a Junior Leader. As such Junior Leader he assisted the instructor under directions from the instructor, which duties included the care and disposition of equipment. On this Saturday morning, between classes, plaintiff was putting some equipment in a storage room when he heard his name called from the gymnasium. A circular running track was located about 24 feet above the gymnasium floor. As plaintiff walked into the gymnasium to ascertain who was calling him, he glanced upwards just at the time defendant Larry Embury dropped a punching

bag from the running track toward the gym floor, which bag struck plaintiff in the face. The punching bag was filled with air but had a metal clasp on the outside, which clasp apparently struck plaintiff in the eye. As a result plaintiff sustained permanent injuries to his left eye. The foregoing facts are undisputed and the dispute in the evidence involves the circumstances existing or occurring prior to the dropping of the punching bag from the running track. For the purposes of this decision it is conceded by defendant that there is evidence in the record from which it may be concluded that Embury was requested by the instructor to bring the punching bag down from the area in which it was used on the level of the running track, and, further that at the time of the incident, the instructor was either out of the gymnasium or was shooting baskets at one end of the gym. The instructor did not see the incident take place. It also appears that while Junior Leaders were given some instruction it did not include any advice concerning dropping objects from the running track. Defendant Embury testified that he was neither advised to, nor warned against dropping the bag to the gym floor.

The allegations of negligence in the complaint are that the defendant, YMCA, "negligently failed to properly supervise the activities carried on in its gymnasium" and "negligently failed to instruct its members, servants and agents in the proper use of its facilities and equipment." In the second count of the complaint the plaintiff alleged negligence against Larry Embury, codefendant. The jury found the issues in favor of defendant on this count with the judgment entered thereon.

On this appeal, defendant YMCA principally argues that its motion for a directed verdict at the close of all the evidence should have been granted and that likewise the trial court erred in denying its post-trial motion for judgment notwithstanding the verdict.

Defendant argues one, that it had no general duty of supervision or any particular duty of supervision under the circumstances. Two, that the injury was not the foreseeable result of any act or omission of defendant and three, that the injury was not proximately caused by any omission or act of defendant.

Defendant insists that it was under no duty to supervise the activities in its gymnasium. There being no duty, it follows, according to defendant, that no liability can arise as a consequence of an alleged breach of a nonexistent duty.

Defendant relies primarily on Kos v. Catholic Bishop of Chicago, 317 Ill App 248, 45 NE2d 1006, in which the court affirmed the dismissal of the complaint for failure to state a cause of action. According to the complaint, the plaintiff was injured when a fellow student threw a brush at him in the lunchroom of a school operated by the defendant. The complaint alleged that the plaintiff's injury resulted from the failure of the defendant to supervise the lunchroom and that the defendant either knew or should have known that the conduct of the students in the lunchroom was such that injury might result in the absence of proper supervision. To the extent that the Kos case indicates that a school may not be under any duty of supervision or that no such duty exists despite knowledge of conditions likely to result in injury, we believe the decision is not harmonious with the current trend of decisions in this area. The defendant in Kos was a charitable organization and as such was immune from tort liability. Although defendant elected to waive its charitable immunity, it may well have been that the court nevertheless tacitly applied the traditional reasons supporting the doctrine of charitable immunity. See Wendt v. Servite Fathers, 332 Ill App 618, 76 NE2d 342.

In opposition to the Kos case, plaintiff cites Miller v. Veterans of Foreign Wars of United States, 56 Ill App2d 343, 206 NE2d 316 (where a child rehearsing for holiday activities, was injured by stepping off stage on partly opened storage door) and Kita v. YMCA, 47 Ill App2d 409, 198 NE2d 174 (child injured in fall from tree at YMCA Day Camp). The foregoing cases also involve the issue of whether the complaints stated a cause of action, and the court, in holding that they did, was not so much concerned with the substantive duties of the defendant as with the specificity of the allegations of the complaint, concluding that they sufficiently informed the defendant of the nature of plaintiff's cause of action.

In the Miller case the court quotes from 65 CJS, Negligence, § 12, as follows, "The known characteristics of children should, however, be taken into consideration in determining whether or not sufficient care for the safety of a child has been exercised in a particular case. Accordingly, the fact that children cannot and do not ordinarily exercise the same degree of prudence and care for their own safety as adults, imposes on those by whose acts or omissions a child may be injured, the obligation of exercising more vigilance and caution than might be sufficient with respect to an adult, and conduct which might reach the standard of ordinary care with respect to an adult might, in the case of a child, amount to negligence or even gross negligence." Although the court in Miller does not attempt to specify the nature or extent of the duties which may be imposed upon an organization respecting minors participating in its activities, it would appear to us that a duty of supervision may arise or exist with respect to particular circumstances or relationships. The duties and responsibilities of an organization to which the care or control of children is entrusted are sometimes said to be akin to the duties and responsibilities of parents. See Lawes

174

v. Board of Education of City of New York, 16 NY2d 302, 266 NYS2d 364, 213 NE2d 667. Such an organization is not an insurer of the safety of the children involved. On the other hand, such an organization may not avoid liability for injuries resulting from its failure to exercise reasonable care.

██ The force of defendant's argument is, however, entirely dissipated when it is considered in relation to its own evidence. The President of the YMCA testified he believed that supervision of the gymnasium activities was required and that in fact the YMCA employed a paid instructor for that purpose. Under such circumstances, it can hardly be contended that a duty did not exist which in fact the defendant had accepted, assumed and implemented.

Questions of "foreseeability" or "proximate cause" are, we believe, so interrelated that defendant's assignments of error with respect thereto will be considered together. Such questions are frequently raised in personal injury actions and both parties would appear to agree that the Illinois Pattern Jury Instruction respecting proximate cause, represents an appropriate distillation of the many observations of courts on the subject. Pattern Jury Instruction Number 15.01 provides, "When I use the expression 'proximate cause,' I mean a cause which, in natural and probable sequence, produced the injury complained of. It need not be the only cause nor the last nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury." Both parties argue that the application of the principle embodied in the foregoing instruction support their respective positions. Defendant argues that the proper application of the rule requires that its nonliability is established as a matter of law, arguing that the immediate and only proximate cause of the injury was the nonnegligent conduct of an intervening third party. Plaintiff argues that the con-

duct of the third party was but a link in a chain of causation and that the issue is one of fact properly resolved by the jury in his favor.

In our opinion these issues were appropriately submitted to the jury and there is ample evidence supporting its verdict in favor of plaintiff. It is admitted that at the time of this incident the instructor was not supervising, and that such inattention occurred at a time when he had directed one of his young assistants to bring the punching bag down from the upper level. Conflicting inferences may be drawn from these circumstances, including the inference that plaintiff's injury was the foreseeable and proximate result of inadequate supervision.

Defendant also argues that the trial court erred in denying its motion for a new trial because of circumstances occurring during the trial. According to defendant's written motion for a mistrial made at the close of the evidence, it appears that codefendant Embury and his counsel left the courtroom after the former had concluded his testimony and did not return. This, according to defendant, confused the jury thereby affecting its ability to properly determine the issues. We find no merit in this contention. We are unaware of any rule that requires a codefendant to be present at the time of trial or during the trial. In any event we fail to see how defendant could have been prejudiced by codefendant's absence.

For the foregoing reasons the judgment of the Circuit Court of Peoria County is affirmed.

Judgment affirmed.

ALLOY and SCHEINEMAN, JJ., concur.